**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER WILLIAMS,<br><br>                                Plaintiff,<br><br>      v.<br><br>BRIAN P. STACK, *et al.*,<br><br>                               Defendants. | Case No. 22cv2439 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

    *Pro se* Plaintiff Christopher Williams ("Plaintiff") alleges his constitutional rights were violated on five occasions in relation to an apartment building he owns. D.E. 12 ("FAC").[1] Defendants Brian P. Stack ("Stack"), Mollie Hartman-Lustig ("Hartman"), Cory Benavides ("Benavides"), Alejandro Velazquez ("Velazquez"), Martin Martinetti ("Martinetti"), James Hernandez ("Hernandez"), Sal Ferlise ("Ferlise"), and Jose Gonzalez ("Gonzalez") are employees of the City of Union City ("City") (collectively, "City Defendants"). Defendants Adam Bulin and Bulin Associates, Inc. are state court-appointed receivers ("Receiver Defendants") (collectively with City Defendants, "Defendants"). The City Defendants and Receiver Defendants separately move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). D.Es. 45 ("City Mot.") & 46 ("Receiver Mot."). The Court decides the motions without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b). For the reasons below, the Court will **GRANT** the City Defendants' and

---

[1] First Amended Complaint.

Receiver Defendants' (collectively, "Defendants") motions and **DISMISS** the FAC in its entirety with **prejudice**.[2]

I. **BACKGROUND**[3]

   **A. Factual Background**

Plaintiff owns, resides at, and rents to tenants a three-unit apartment building ("Property") in the City. *See* FAC at 22, ¶ 47.[4] In April 2009, prior to closing on the Property, Plaintiff sought a Certificate of Occupancy from the City; however, the City informed him that because the Property contained three family units, he needed to "contact the New Jersey Department of Community Affairs to obtain a . . . Certification of Inspection[,]" which is equivalent to a Certificate of Occupancy. *Id.* at 22-23, ¶ 48; *see also id.* at 23, ¶ 50. Also in April 2009, Plaintiff "insisted" that the City's "Building Department [perform] a total inspection of everything electrical, plumbing[,] building, [and f]ire to make sure that all was in order with the [P]roperty . . . ." *Id.* at 23, ¶ 49. The City then "performed the [i]nspection in concert with the City['s] . . . Fire Prevention [Department] . . . ." *Id.* Plaintiff was told "everything [wa]s fine with [the P]roperty [regarding the] building, electrical[,] and plumbing[,]" but that there was "a need to upgrade the Fire Alarm System . . . ." *Id.*

Plaintiff acquired the Property on June 30, 2009. *Id.* Plaintiff wanted to "enjoy peace of mind and quality of life" at the Property, "but was deprived of that" by Defendants. *Id.* at 22, ¶ 47.

---

[2] Because the Court finds that Plaintiff's claims against Defendants are barred as a matter of law, amendment would be futile. *See Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014) ("Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile."); *Ernande v. Lynch*, 2011 WL 13196609, at *1 (D.N.J. July 25, 2011) (Amendment is futile when the plaintiff's claims "are not viable . . . .").

[3] This section derives mainly from the FAC. On a motion to dismiss, the Court takes all well-pleaded facts as true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[4] Because the FAC's formatting is inconsistent, the Court will cite to the page(s) and only the immediate paragraph(s) for clarity.

2

Defendants have terrorized Plaintiff over the past twelve years "financially with threat, intimidation, [and] harassment," including "constantly dragging [Plaintiff] to [c]ourt with malicious, invalid, and non-existent violations" as to the Property. *Id.* at 24, ¶¶ 51-52. Plaintiff highlights five such instances.

First, on August 6, 2015, Hernandez, a City code enforcement officer, notified Plaintiff via letter that the residential use of the Property's ground floor apartment was non-conforming with the City's code, and it needed to be vacated and returned to its original, non-habitable condition ("non-conforming letter"). *Id.* at 25, ¶ 55 & 66-67, ¶ 100; *see also* D.E. 42-5. As a result, Plaintiff was unable to collect rent from the ground floor tenants from August 1, 2015, to April 30, 2016. FAC at 26, ¶ 56.

Second, on January 10, 2017, Hernandez sent a second non-conforming letter regarding the Property's ground floor apartment. *Id.* at 31-32, ¶¶ 67-68. As a result, Plaintiff was unable to collect rent from the ground floor tenants from November 1, 2016,[5] to at least January 19, 2023, the date the FAC was filed. *Id.* at 58, ¶¶ 1, B.

Third, on January 9, 2019, Ferlise, "the City[']s . . . [i]nspector and [s]ub-code [b]uilding [o]fficial[,]" issued a notice to Plaintiff regarding the Property's non-conforming status and ordered Plaintiff to remedy the violations. D.E. 42-9. Then, on January 17, 2019, Hartman and Benavides, attorneys for the City, maliciously filed a Complaint and Order to Show Cause with seeking the appointment of a receiver in state court ("State Case"). *Id.* at 35, ¶ 72 & 43, ¶ 82; *see also* City Mot. at 5.

---

[5] This date predates the second non-conforming letter. Because Plaintiff did not collect rent after October 31, 2016, he begins this timeframe with November. FAC at 58, ¶ 1.

3

Fourth, on March 1, 2019, the Honorable Jeffrey R. Jablonski appointed the Receiver Defendants as receivers in the State Case. *Id.* at 39-40, ¶¶ 77-78 & 61, ¶ D; *see also* D.E. 42-10.

And fifth, on August 1, 2019, the Receiver Defendants began collecting receiver fees, which is ongoing. *Id.* at 104, ¶ 1 & 62, ¶ E.

**B. Procedural History**

On May 1, 2022, Plaintiff filed a complaint against Defendants (D.E. 1), which was amended January 19, 2023 (FAC). As to all Defendants, Plaintiff alleges that they individually, and as part of a conspiracy, violated his Fifth Amendment right against unlawful takings ("Takings"), Fifth Amendment right to procedural due process, and Fourteenth Amendment right to equal protection under the law.[6] *See generally* FAC; *see also* U.S. CONST. amends. V, XIV.

As to the City Defendants, Plaintiff alleges the following Takings (1) the loss of rent from August 1, 2015, to April 30, 2016; (2) the loss of rent from November 1, 2016, to at least January 19, 2023; (3) the initiation of the State Case; (4) the appointment of the Receiver Defendants; and (5) the collection of receiver fees. *See id.* at 52-62. Plaintiff also alleges Due Process and Equal Protection claims against all City Defendants arising from each alleged Taking. *See, e.g.*, *id.* at 11, ¶ 22; 42, ¶ 8; 114-16, ¶ 136.

Claims arising from the first- and second-numbered Takings ("First Violation" and "Second Violation," respectively) are brought against the City; Hernandez, a City code enforcement officer; Martinetti, a City construction officer; and Hartman, a City attorney. *Id.* at 43, ¶ A & 57, ¶ B. Claims arising from the third-numbered Taking ("Third Violation") are brought

---

[6] At times, the FAC is unclear as to what claims are brought against which Defendants and for what conduct. Because Plaintiff is *pro se*, the Court liberally construes the FAC. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards that formal pleadings drafted by lawyers.").

4

against the City; Ferlise, a City inspector and sub-code building official; Martinetti; and Hartman. *Id.* at 59, ⁋ C. Claims arising from the fourth-numbered Taking ("Fourth Violation") are brought against the City; Stack, the City's mayor; Velazquez, Stack's Chief of Staff; Martinetti; Hernandez; Ferlise; Hartman; and Gonzalez, a City housing inspector. *Id.* at 61, ⁋ D. And claims arising from the fifth-numbered Taking ("Fifth Violation") are brought against Benavides, a City attorney. *Id.* at 62, ⁋ E (collectively, "City Claims").

As to the Receiver Defendants, Plaintiff alleges Takings, Due Process, and Equal Protection claims, all arising from the collection of receiver fees ("Receiver Claims"). *Id.*

The City Defendants and Receiver Defendants now separately move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). *See* City Mot.; Receiver Mot. Plaintiff opposes both motions in a singular opposition. D.E. 47 ("Opp'n"). The City Defendants and Receiver Defendants have replied. D.Es. 48 ("Receiver Reply") & 49 ("City Reply"). For the reasons below, the Court will **GRANT** both motions and **DISMISS** the FAC in its entirety against all Defendants **with prejudice**.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the plaintiff's claims must be facially plausible, meaning that the well-pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In deciding the motion, "a court must consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Finally, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards that formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).

### III. ANALYSIS

#### A. The Claims Against the City Defendants are Time-Barred[7]

The City Defendants argue that the City Claims are time-barred as a matter of law. City Mot. at 10, 30. Specifically, they argue that the City Claims are brought under 42 U.S.C. § 1983 ("Section 1983"), which has a two-year statute of limitations, and began accruing over two years before Plaintiff filed his original complaint on May 1, 2022. *See id.* at 10, 12. The City Defendants also argue that equitable tolling does not apply. *Id.* at 14-15. Plaintiff argues the City Claims are not time-barred because (1) the Takings Claims are brought under New Jersey Statutes Annotated ("NJSA") 2A:14-1 (New Jersey's property torts statute), not Section 1983; (2) the United States Constitution "is not a statute" and therefore "does[ not] have a statute of limitations"; and (3) equitable tolling applies. Opp'n at 5-6. The Court agrees with the City Defendants.

---

[7] Because the City Claims are time-barred and dismissed with prejudice, the Court does not address the City Defendants' other arguments for dismissal.

The Court first determines what statute the City Claims are brought under. Plaintiff agrees that his claims "arise from . . . the United States Constitution . . . ." FAC at 4, ¶ a (asserting federal question jurisdiction). But, Plaintiff believes that because he uses NJSA 2A:14-1 to vindicate these rights, Section 1983 is irrelevant. Opp'n at 5-6. However, neither state law nor the federal Constitution provides a private cause of action for the City Claims. Rather, "Section 1983[,]" enacted by Congress, "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (internal quotation marks omitted). Because the City Claims allege violations of Plaintiff's federal constitutional rights, the Court will apply Section 1983's statute of limitations.[8]

A Section 1983 claim "ordinarily accrues when the plaintiff knows or has reason to know of [their] injury." *Coello v. DiLeo*, 43 F.4th 346, 352 (3d Cir. 2022). Because Section 1983 claims are "best characterized as personal injury actions[,]" courts must apply the personal injury statute of limitations of the state where the injury occurred. *Owens v. Okure*, 488 U.S. 235, 240 (1989). In New Jersey, where all of Plaintiff's injuries occurred, it is two years. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Thus, for a City Claim to not be time-barred, it must have began accruing on or after May 1, 2020, or two years prior to Plaintiff filing his initial complaint. *See* D.E. 1. Per the FAC, the First Violation occurred on August 6, 2015, and the Fifth Violation on August 1, 2019, with the Second, Third, and Fourth Violations occurring in between.[9] *See, e.g.*, FAC at 53-62. Plaintiff makes no claim that he only became aware of these alleged Takings after

---

[8] The Court is not ruling on whether Plaintiff's allegations would state a claim for relief under NJSA 2A:14-1 if brought before an appropriate court.
[9] Second Violation: January 10, 2017 (FAC at 31-32, ¶¶ 67-68); Third Violation: January 9, 2019 (*id.* at 35, ¶ 72 & 59, ¶ C.); Fourth Violation: March 1, 2019 (*id.* at 39-40, ¶¶ 77-78 & 61, ¶ D).

7

these dates. Consequently, the City Claims are time-barred unless the Court applies equitable tolling. The Court will not.

Plaintiff argues equitable tolling is warranted because there was "[p]rosecutorial [m]isconduct, [w]ithholding [of] exculpatory evidence, intimidations, actual fraud, actual malice, and concealment." FAC at 50-51, ¶ 93; *see also* Opp'n at 5 (cleaned up) (stating the City Defendants "acted with malice and fraud to obstruct Plaintiff"). "Equitable tolling applies when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) (internal quotation marks omitted). This occurs if (1) the defendant actively misled the plaintiff regarding the plaintiff's cause of action, (2) the plaintiff was prevented from asserting their rights "in some extraordinary way[,]" or (3) the plaintiff timely asserted their rights, but did so mistakenly in the wrong forum. *Id.* No scenario applies to any of the City Claims.

First, Plaintiff has not demonstrated how the City Defendants actively misled Plaintiff. For the First and Second Violations, Plaintiff received letters that expressly notified him of the Property's non-conforming status and his inability to collect rent; indeed, he threatened to sue his tenants regarding the uncollected rent. FAC at 33, ¶ 70. Plaintiff also does not claim he was misled as to the initiation of the State Case (Third Violation), the appointment of a receiver (Fourth Violation), or the collection of receiver fees (Fifth Violation). Second, Plaintiff does not state how he was prevented from asserting his rights, let alone in an "extraordinary" way. Though Plaintiff alleges prosecutorial misconduct and the withholding of exculpatory evidence, there is no criminal case, and Plaintiff fails to explain what other misconduct prevented him from asserting his rights, and how. And third, nothing in the record supports, nor does Plaintiff argue, that he timely asserted his rights before this case, but in the wrong forum. As such, the Court will not toll the statute of

limitations for any of the City Claims, which remain time-barred. *See Parker v. Royal Oak Enters., Inc.*, 85 Fed. App'x 292, 295 (3d Cir. 2003) (not applying equitable tolling where the plaintiff "d[id] not allege that [the defendant] actively misled him respecting his cause of action," or that he timely asserted his rights in the wrong forum); *Addlespurger v. Wecht*, 739 Fed. App'x 709, 712 (3d Cir. 2018) ("[B]ald assertions[]" of the defendant's misconduct are "insufficient bas[e]s for tolling the limitations period.").

Accordingly, the Court will **DISMISS** the FAC against the City Defendants **with prejudice**.

### B. The Receiver Defendants are Entitled to Quasi-Judicial Immunity[10]

The Receiver Defendants argue that they are entitled to quasi-judicial immunity by virtue of being state court-appointed receivers. Receiver Mot. at 12. Plaintiff argues the Receiver Defendants are not entitled to quasi-judicial immunity because they were acting "outside the scope of their duties" with "actual fraud, actual malice, willful misconduct, and prosecutorial misconduct pursuant to *Brady v. Maryland*, 373 U.S. 83 [(1963)]." Opp'n at 12. First, the Court notes that *Brady*, which held that prosecutors must turn over all exculpatory evidence to a criminal defendant, has no bearing on the Court's analysis, as there is no criminal case, prosecutor, or exculpatory evidence at issue. Second, the Court agrees with the Receiver Defendants that they are entitled to quasi-judicial immunity.

"Judicial immunity" is the absolute immunity judges receive from suits for damages for decisions made in their official capacity, even if a decision was "[e]rroneous, controversial, [or] . . . unfair . . . ." *Trinh v. Fineman*, 9 F.4th 235, 237-38 (3d Cir. 2021). "The adjudicative function

---

[10] Because the Receiver Defendants are entitled to quasi-judicial immunity and the Receiver Claims are dismissed with prejudice, the Court does not address the Receiver Defendants' other arguments for dismissal.

9

that judges perform requires that they be immune from suits for damages, for 'if judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits.'" *Id.* (cleaned up) (quoting *Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000)).  Courts will also "extend a similar immunity[,]" referred to as a "quasi-judicial immunity[,]" "[w]hen the nature of an official's functions is akin to that of a judge . . . ."  *Id.* at 238.  A state court-appointed receiver is one such official; they are considered an "arm of the court" because their powers only extend to what a judge "'confer[s] upon [them] . . . .'"  *Id.* (quoting *Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 371 (1908)).

Here, Plaintiff sues the Receiver Defendants under Section 1983[11] for actions related to their collection of receiver fees.  Though Plaintiff argues the Receiver Defendants acted "outside the scope of their duties[,]" he states no facts in support.  Opp'n at 12.  Rather, Plaintiff's allegations sound more in "disagreement with the outcome of [the Receiver Defendants'] court-ordained actions" than actual misconduct.  *Trinh*, 9 F.4th at 239.  Thus, the Court finds that the Receiver Defendants are entitled to quasi-judicial immunity, which bars the Receiver Claims.  *See id.* (dismissing claims against a state court-appointed receiver where the plaintiff's allegations that the receiver acted outside of his authority were unsupported).

Accordingly, the Court will **DISMISS** the FAC against the Receiver Defendants **with prejudice**.

---

[11] Judicial immunity applies to Section 1983 claims.  *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012); *Forrester v. White*, 484 U.S. 219, 224-26 (1988).

## IV.     CONCLUSION

For the reasons stated above, the Court will **GRANT** both motions and **DISMISS** the FAC in its entirety against Defendants **with prejudice**.  An appropriate Order accompanies this Opinion.

Dated: September 5, 2023

Evelyn Padin, U.S.D.J.